USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/29/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, -against- RASHAAD CONYERS et al., Defendants. | S13 15-CR-537 (VEC) MEMORANDUM OPINION AND ORDER |

VALERIE CAPRONI, United States District Judge:

Defendant William Bracy is alleged to have been a member of a violent gang known as the "Young Gunnaz" or "YGz." S13 15-CR-537 (the "S13 Indictment") (Dkt. 590) ¶¶ 1-2. Count Five charges that, in connection with Bracy's participation in the YGz, he and two other members of the YGz beat to death Moises Lora, a member of a rival street gang, in violation of 18 U.S.C. §§ 1959(a)(1), (2). S13 Indictment ¶¶ 7.l, 19-20. Section 1959 provides that a defendant convicted of murder in aid of racketeering must be sentenced to life imprisonment or death. Bracy moved to dismiss Count Five of the indictment as unconstitutional as applied to him.[1] Because he was a juvenile at the time of Lora's murder, he contends that the penalty provisions of Section 1959 violate the Eighth Amendment as applied to him and therefore Count Five must be dismissed as against him. *See Miller v. Alabama*, 132 S. Ct. 2455 (2012). For the reasons that follow, Bracy's motion to dismiss Count Five is DENIED.

[1] Bracy made his motion by adopting the arguments made by a co-defendant, Anthony Scott. Dkts. 204, 489, 493. Scott has since pled guilty. For convenience, the Court refers to arguments Scott made as Bracy's throughout.

## DISCUSSION

### 1. Background

The background of the Government's case is discussed in the Court's opinion resolving other pre-trial motions filed by Bracy and his co-defendants. Dkt. 597. As is relevant to this issue, Bracy is charged with being a member of the YGz, a racketeering enterprise that began operating in approximately 2005. S13 Indictment ¶ 5. The YGz are alleged to have been involved in multiple murders; robbery and attempted robbery; and the distribution of controlled substances, including crack cocaine, heroin, and marijuana. *Id*. Bracy was seventeen at the time of Lora's murder on April 16, 2012. S13 Indictment ¶ 20; Dkt. 494 at 2. He and two of his charged co-conspirators are alleged to have attacked Lora at 700 Morris Avenue, Bronx, New York, and beat him to death. S13 Indictment ¶ 20.

The Government and defense counsel agree that the Eighth Amendment precludes imposition of a mandatory life sentence on Bracy for crimes committed prior to his eighteenth birthday. In *Miller*, the Supreme Court held that juvenile offenders may not be sentenced to mandatory life-without-parole sentences. 132 S. Ct. at 2464. After *Miller*, it remains permissible to sentence a juvenile to life in prison, but a sentencing judge may do so only after considering the "mitigating qualities of youth," *id.* at 2467 (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)), and its "hallmark features" of "immaturity, impetuosity, and failure to appreciate risks and consequences," *id.* at 2468.

The Federal murder in aid of racketeering statute under which Bracy is charged does not provide discretion to the sentencing judge. It provides, in relevant part:

> (a) Whoever, . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . , or attempts or conspires so to do, shall be punished--

> (1) for murder, by death or life imprisonment, or a fine under this title, or both;
> . . . .

18 U.S.C. § 1959(a). Because the penalty provision plainly contravenes *Miller*, Bracy argues that the statute is unconstitutional as applied to him. Def. Mem. (Dkt. 204) at 2-3. His motion contends that no saving construction of Section 1959 is viable and, for support, he relies on *United States v. Under Seal*, 819 F.3d 715 (4th Cir. 2016), a Fourth Circuit decision that held Section 1959 to be unconstitutional as applied to juvenile offenders charged with murder. Def. Mem. at 2-3.

According to the Government, the Court can remedy the constitutional problem in Section 1959 by, first, striking the penalty provision in subsection 1959(a)(1) as applied to juveniles and then, second, by reading two other provisions of Title 18—Section 3559(a) and Section 3581—to fill the resulting gap in the statute with an alternative penalty of *up to* life in prison. Section 3581 provides, in relevant part, that a defendant who has been found guilty of a Class A felony may be sentenced to a term of imprisonment equal to the "duration of the defendant's life or any period of time." 18 U.S.C. § 3581(b)(1).[2] Because Congress has not included a letter classification in Section 1959, Section 3581 can only apply by reference to Section 3559(a)(1), which provides, in relevant part, that:

> (a) An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is--
>
> (1) life imprisonment, or if the maximum penalty is death, as a Class A felony;
> . . . .

---

[2] In full, Section 3581 reads:

> (a) A defendant who has been found guilty of an offense may be sentenced to a term of imprisonment.
> (b) The authorized terms of imprisonment are--
> (1) for a Class A felony, the duration of the defendant's life or any period of time;
> . . . .

18 U.S.C § 3581.

18 U.S.C. § 3559(a)(1). Assuming that Section 1959 is a statute for which the "maximum term of imprisonment authorized" is either life imprisonment or death, despite the fact that both of those penalties are invalid as applied to Bracy, the Government argues that Section 3581 operates as a background penalty provision that fills the gap in Section 1959 caused by *Miller*. Gov't Opp. (Dkt. 216) at 5-6. The Government is forthright in conceding that no Court has previously invalidated a penalty provision and used Section 3581 as a default provision to fill the resulting statutory gap. *Id.* at 11. But it draws support from another provision, Section 3551, which provides that the penalty provisions of Chapter 227, including Section 3581, apply unless otherwise provided by statute. *See* 18 U.S.C. §§ 3551(a), (b)(3); Gov't Opp. at 5.

**2. Partial Invalidation of Unconstitutional Statutes**

In *United States v. Booker*, the Supreme Court articulated a three part standard to be used to determine whether unconstitutional provisions may be severed from a statute without invalidating the statute as a whole. 543 U.S. 220, 258-59 (2005). The Court began with "a presumption that the enactment is severable from the remainder of the section or act." *Hamad v. Gates*, 732 F.3d 990, 1001 (9th Cir. 2013) (citing *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 685-86 (1987)). The touchstone under *Booker* is legislative intent. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). To determine what parts of a statute can be retained, the Court must consider what portions of the statute are "(1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress'[s] basic objectives in enacting the statute."[3] *Booker*, 543 U.S. at 258-59 (internal citations and quotation

[3] In a notable recent opinion, the D.C. Circuit described the analysis as asking whether "(i) Congress would have preferred the law with the offending provision severed over no law at all; and (ii) the law with the offending provision severed would remain 'fully operative as a law.'" *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 37 (D.C. Cir. 2016) (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010)). The Court understands this to be a difference in phraseology only. The substance of the test applied by the *PHH Corp.* Court is the same as the test articulated in *Booker*.

marks omitted). Most often, that requires the Court to consider whether the "legislature [would] have preferred what is left of its statute to no statute at all[.]" *Ayotte*, 546 U.S. at 330. The presumption of severability and the *Booker* standard reflect the principle that Courts should be careful not to invalidate more of a statute than necessary because holding legislation unconstitutional "frustrates the intent of the elected representatives of the people." *Ayotte*, 546 U.S. at 329 (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984)).

The question presented in this case is whether, in light of *Miller*, there is any constitutionally valid portion of Section 1959(a) as applied to juveniles that will function independently and "in a *manner* consistent with the intent of Congress." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2668 (2012) (joint dissent) (quoting *Alaska Airlines*, 480 U.S. at 685). The first step in the analysis is to consider what portions or applications of Section 1959(a) are constitutional, mindful of the Supreme Court's directive that the Court should invalidate as little of a statute as constitutionally necessary. *See Ayotte*, 546 U.S. at 329.

The Court's leeway to shape a remedy that is faithful to legislative intent is limited. "[E]ditorial freedom . . . belongs to the Legislature, not the Judiciary." *Free Enter. Fund*, 561 U.S. at 5010. Generally speaking, the Supreme Court has endorsed "application severance," or "as-applied" challenges, pursuant to which the Court invalidates a statute in some of its applications but leaves the statute intact under other circumstances. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 486-87 (1995) (O'Connor, J., concurring in part and dissenting in part). For example, in *Tennessee v. Garner*, the Supreme Court invalidated a statute allowing for the use of deadly force against fleeing suspects, but only as applied to unarmed and non-dangerous suspects. 471 U.S. 1, 11 (1985); *see also Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501-02 (1985) (describing past examples of application severance,

including the *Garner* case). When the changes are sufficiently straightforward, the Supreme Court has also permitted so-called "blue penciling," pursuant to which the Court strikes from a statute offensive language and gives effect to what remains. *See Free Enter. Fund*, 561 U.S. at 509 (describing excision as "blue-penciling").

The Second Circuit has carefully considered the limits of the Court's authority to revise an unconstitutional statute in light of *Booker*. In *John Doe, Inc. v. Mukasey*, the Second Circuit addressed the nondisclosure provisions of the USA Patriot Improvement and Reauthorization Act of 2005, Pub. L. 109-177, 120 Stat. 192 and the USA Patriot Act Additional Reauthorizing Amendments Act of 2006, Pub. L. No. 109-178, 120 Stat. 278. 549 F.3d 861 (2d Cir. 2008). The nondisclosure provisions prevented the recipient of a national security letter (or "NSL") from disclosing that it had received such a letter, subject to only limited judicial review. *Id.* at 867 (citing 18 U.S.C. §§ 2709, 3511). As written, the non-disclosure provisions implicated substantial First Amendment concerns. The *John Doe, Inc.* Court declined, however, to add to the statute an obligation for the Government to initiate judicial review of an NSL or to re-write another provision that made an administrative certification of the need for nondisclosure conclusive in any proceedings. *Id.* The Court explained that it was beyond its authority to "interpret" or "revise" the statute to impose an extra-statutory obligation that was constitutionally necessary but not textually supported by the statute. *Id.* at 883. Relying instead on *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 373-74 (1971), the Circuit concluded that if the Government were to adopt administratively a policy of initiating judicial review, it would be "within [the Court's] judicial authority" to hold that traditional time limits required by *Freedman v. Maryland*, 380 U.S. 51, 59 (1965), would apply in the absence of any statutory guidance from Congress. *John Doe, Inc.*, 549 F.3d at 883-84.

The line drawn by the *John Doe, Inc.* Court is extremely fine,[4] but it is consistent with case law from the Supreme Court and other Circuits that endorse gap-filling under narrow circumstances where the Court's remedy is rooted in historical practice and past enactments or other indicia of legislative support. In *Booker,* the Supreme Court invalidated on Sixth Amendment grounds provisions of the Sentencing Reform Act of 1984, Pub. L. 98-433, Title II §§ 212(a)(2) *et seq*., 98 Stat. 1837, 1988, that provided for mandatory sentencing guidelines and judicial fact-finding. The Court held that the remaining statute functioned independently because the Court could apply a "reasonableness" standard of appellate review based on "related statutory language, the structure of the statute, and the 'sound administration of justice.'" *Booker*, 543 U.S. at 260-61 (quoting *Pierce v. Underwood*, 487 U.S. 552, 560 (1988)). Similarly, in *Free Enterprise Fund*, the Supreme Court concluded that in the absence of a constitutionally-permissible standard for dismissing an executive officer, the "traditional default rule" that "removal is incident to the power of appointment" applied. *Free Enter. Fund*, 561 U.S. at 509. Even more recently, in *PHH Corp*., the D.C. Circuit also refused to pick-and-choose from the provisions of a statute in order to cure a constitutional problem, holding instead that the default rule that the power to dismiss follows the power to appoint would apply in the absence of any further direction from Congress. *See PHH Corp.*, 839 F.3d at 39.

Assuming that a saving construction of Section 1959 is fairly possible, the Court must consider whether the remaining statute is consistent with what "'Congress would have intended' in light of the Court's constitutional holding [in *Miller*]." *Booker*, 543 U.S. at 246 (quoting

---

4 The analysis under *Booker* and *John Doe, Inc.* may be better described as requiring the Court to consider the extent of the revisions involved, including whether the revisions are supported by historical practice or apply under similar circumstances, and their congruence with Congressional intent in light of the overall statutory scheme. To the extent the revisions are less substantial or more plainly consistent with Congress's intent, the more likely they are to be a permissible saving construction.

*Denver Area Ed. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 767 (1996)). Determining Congress's intent under the circumstances is necessarily an exercise in hypotheticals. *Cf. PHH Corp.*, 839 F. 3d at 37 ("in considering Congress's intent with respect to severability, courts must decide—or often speculate, truth be told—whether Congress would 'have preferred what is left of its statute to no statute at all'" (quoting *Ayotte*, 546 U.S. at 330)). Nonetheless, the Supreme Court has explained that whether a statute functions in a "manner" consistent with Congress's intent requires the Court to consider, *inter alia*, the statute's legislative history, *Regan*, 468 U.S. at 669-70, the statute's "basic objectives" (to the extent they are discernable), *Booker*, 543 U.S. at 264-65, and the effect of the Court's ruling on related elements of the statutory scheme, *see Sebelius*, 132 S. Ct. at 2608. In *United States v. Jackson*, for example, the Supreme Court invalidated the capital penalty provision of the Federal Kidnaping Act on Fifth and Sixth Amendment grounds and concluded that the remaining statute—including a life penalty—functioned independently. 390 U.S. 570, 586 (1968). The Court concluded that the capital penalty provision of the Act was severable and that the remaining statute would function consistent with Congress's basic purpose to make interstate kidnapping a federal offense because the remaining penalty provision was the same as had been originally enacted by Congress in 1932. *Id.* at 587-89.

### 3. *Miller* Requires the Court to Invalidate Section 1959(a)'s Mandatory Minimum Penalty

*Miller* requires the Court to invalidate Section 1959(a)(1) to the extent it provides for a mandatory life sentence in Bracy's case. In *Miller*, the Supreme Court held that children have "diminished culpability and greater prospects for reform" vis-a-vis adults. *Miller*, 132 S. Ct. at 2464. Because juveniles are more likely to be reckless or impulsive and more vulnerable to negative influences, they are promising candidates for rehabilitation as the hallmarks of youth

subside. *Id.* at 2465. Statutory mandatory life sentences are unconstitutional because they "prevent the sentencer from taking account of these central considerations." *Id.* at 2466. *Miller* demands sentencing discretion to account for a juvenile's lessened culpability and potential for rehabilitation, but it does not rule out a life sentence under all circumstances. Analogizing to the capital context, *Miller* requires a sentencing court to account for the "mitigating qualities of youth" before handing down a life sentence. *Id.* at 2467 (quoting *Johnson*, 509 U.S. at 367). Yet in some rare cases, cases in which the crime reflects "irreparable corruption," a life sentence is potentially appropriate and constitutional. *Id.* at 2469 (quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2005)).

*Miller* does not require the Court to invalidate Section 1959(a)(1) in all applications to juveniles. Juveniles may be sentenced to life imprisonment, the maximum penalty authorized by Congress under Section 1959(a)(1),[5] so long as the sentencing court finds that the defendant is irredeemable and so culpable as to warrant a life sentence. The fact that Congress set the same mandatory minimum and maximum sentence does not mean that the Court must invalidate both together. Thus, a juvenile who commits a sufficiently heinous act and who has a sufficiently severe history of criminal conduct may be constitutionally sentenced under Section 1959(a), as enacted by Congress, so long as the Court is not bound by Section 1959(a)'s mandatory minimum. The Government also understands Section 1959(a)(1) as imposing a separable minimum and maximum penalty. *See* Oral Arg. Tr. (Dec. 14, 2016) at 11:10-13 ([THE GOVERNMENT]: "The only thing that is enjoined under *Miller* and *Roper* is the mandatory minimum with the imposition of the death penalty. But the idea that life as the term of imprisonment is not really touched here."), 11:21-22 ([THE GOVERNMENT]: "In this case the

[5] Section 1959(a)(1) also authorizes the death penalty. As applied to juveniles the capital penalty provision of Section 1959(a)(1) is unconstitutional. *See Roper*, 543 U.S. at 568.

minimum here is enjoined. But you still know what the maximum is, it's life."). The maximum penalty for murder in aid of racketeering authorized by Congress in respect of juvenile offenders remains valid post-*Miller*.

The Supreme Court has long recognized that, where possible, invalidating a statute "as to a particular application" is preferable to "striking the entire provision that appears to encompass it." *Nat'l Treas. Emps. Union*, 513 U.S. at 487; *see also Booker*, 543 U.S. at 258 ("And we must 'refrain from invalidating more of the statute than is necessary.'" (quoting *Regan*, 468 U.S. at 652)). The surgical approach applied by the Court to Section 1959(a)(1) is similar to the Supreme Court's narrowly tailored approach to as-applied challenges in past severability cases. In *United States v. Grace*, for example, the Court struck down a federal statute that banned assembly on the Supreme Court's grounds only as applied to the sidewalks outside the Court's building, and even though the statute did not make any distinction between the grounds proper and the sidewalks. 461 U.S. 171, 183 (1983). The *Garner* case is similar; there the Supreme Court invalidated a Tennessee statute that authorized "all the necessary means" to effect an arrest but only to the extent that it authorized deadly force and only to the extent that deadly force was authorized against non-violent offenders. *Garner*, 471 U.S. at 5, 11. Accordingly, the Court concludes that, as applied, it is only the mandatory minimum provision of Section 1959(a)(1) that must be invalidated.

**4. Section 1959(a)(1) Functions Independently Without a Mandatory Minimum**

Having concluded that *Miller* requires the Court to invalidate the mandatory minimum penalty under Section 1959(a)(1), the Court must address whether the remaining statute functions independently and in a "manner" intended by Congress. Because Congress set a fixed penalty in Section 1959(a)(1), invalidating the mandatory minimum creates a "gap" in the statute

whereby a maximum penalty is authorized, but there is no provision for a less-than-life sentence. Under the Government's proposed remedy, the Court would substitute the penalties provided in Section 3581 through reference to Section 3559(a) for those that exist in Section 1959(a)(1). Bracy, on the other hand, argues that the Government's proposed remedy is inconsistent with Congress's intent in passing Section 3581 and would require the Court to impermissibly add to Section 1959(a)(1)—an approach ruled out under *Booker*. Def. Reply (Dkt. 286) at 1-2.

The Court acknowledges the basic tension between *Miller*, which requires discretion at sentencing for juveniles, and Section 1959(a)(1), which provides for fixed-penalty sentencing. The greater the dissonance between the statute as-written and the Constitution's requirements, the more difficult it is to determine what "'Congress would have intended' in light of the Court's constitutional holding [in *Miller*]." *Booker*, 543 U.S. at 246 (quoting *Denver Area Ed. Telecomms. Consortium, Inc.*, 518 U.S. at 767). Nonetheless, *Booker* requires the Court to assume that any sentencing regime enacted by Congress would provide for some degree of judicial discretion, if required by the Constitution. *Cf. Booker*, 543 U.S. at 265 ("We do not doubt that Congress, when it wrote the Sentencing Act, intended to create a form of mandatory Guidelines system. But, we repeat, given today's constitutional holding, that is not a choice that remains open. Hence we have examined the statute in depth to determine Congress' likely intent *in light of today's holding*."). The possibility that Congress might choose a different scheme than the Court can provide in light of *Miller* is inherent in severance analysis and reflects Congress's legislative authority. The Court's task is to consider whether the statute, as constitutionally construed, will serve Congress's "basic purposes" and is consistent with—not necessarily perfectly reflective of—Congress's intent had it legislated with *Miller* in mind.

Assuming that some sentencing discretion is necessary, the Court does not believe that resort to Section 3559(a) and then to Section 3581 is necessary for Section 1959(a)(1) to function independently and in a manner consistent with Congress's basic purposes. Tradition and historical practice suggest that in the absence of more specific guidance, authorization of a maximum penalty permits the Court to sentence a defendant to any term of years up to the maximum authorized penalty. The Courts have considered an analogous statutory "gap" in statutes that authorize a mandatory minimum penalty but do not provide any maximum punishment. *See, e.g.*, 18 U.S.C. § 924(c)(1)(A) (use or carrying of a firearm in furtherance of a crime of violence punishable by "not less than 5 years"). Under those circumstances the Courts apply the "[t]he sensible rule of statutory construction [that] the absence of a specified maximum simply means that the maximum is life imprisonment." *United States v. Wright*, 812 F.3d 27, 32 (1st Cir. 2016) (quoting *United States v. Turner*, 389 F.3d 111, 120 (4th Cir. 2004)); *see also id.* ("An abundance of case law suggests that, in such a situation, the court has wide discretion in imposing a sentence."). The Second Circuit has endorsed a similar default construction in the now-obsolete context of violation of special parole, *Walberg v. United States*, 763 F.2d 143, 148-49 (2d Cir. 1985), and more recently in the context of Section 924(c)(1)(A), *United States v. Johnson*, 507 F.3d 793, 798 (2d Cir. 2007). Section 1959(a) presents the natural corollary to those cases: a statute with a maximum, but no minimum, and the same default rule of construction applies. In the absence of more specific (and constitutional) guidance from Congress, the Court treats the authorization of a maximum penalty as providing discretion to the sentencing judge to sentence anywhere between no penalty and the maximum penalty.

The history and basic purposes of Section 1959(a)(1) provide support for the Court's remedy. Section 1959(a) was codified in the Comprehensive Crime Control Act of 1984, Pub. L.

98-473, Title II § 1002, 98 Stat. 1837, 2137. The original version of the statute was codified as Section 1952B. Section 1952B is materially identical to Section 1959(a) except that it provided for a penalty of "imprisonment for any term of years or for life," 18 U.S.C. § 1952B (Supp. II 1984). Ten years later, Section 60003 of the Federal Death Penalty Act of 1994, Pub. L. 103-322, Title VI, 108 Stat. 1796, 1969, 2147, modified the sentencing provisions of Section 1959 (along with many others) to include the mandatory minimum, which is unconstitutional as applied to this Defendant. In other words, Congress has previously considered and enacted the exact sentencing scheme the Court adopts today.

The fact that Congress previously endorsed a penalty of up to life imprisonment in Section 1959(a) is strong evidence that the Court's approach is consistent with the basic purposes of the statute and is preferable to invalidating the statute entirely. The Supreme Court considered and relied on similar evidence in *United States v. Jackson* to partially invalidate and sever the capital penalty provision of the Federal Kidnaping Act. 390 U.S. at 586-89 ("In this case it happens that history confirms what common sense alone would suggest: The law as originally enacted in 1932 contained no capital punishment provision. . . . It is therefore clear that Congress would have made interstate kidnaping a federal crime even if the death penalty provision had been ruled out from the beginning."). At the risk of stating the obvious, the basic purpose of Section 1959 is to prohibit murder in furtherance of violent organized crime and to deter such murders by providing for the harsh penalty of life imprisonment. As in *Jackson*, elimination of the invalid mandatory minimum "in no way alters the substantive reach of the statute and leaves completely unchanged its basic operation." *Id.* at 586. The Court's remedy accomplishes that goal by retaining Section 1959's prohibitory clause, as well as the maximum penalty provided by Congress. It would be to seriously lose sight of the forest for the trees to

argue that Congress would prefer the Court to invalidate Section 1959 entirely as applied to juveniles who commit such murders than to allow the sentencing court discretion to sentence such defendants to a term less than life.

The Defendant's argument that Section 1959(a) is invalid in all its applications to juveniles is based on the Fourth Circuit's reasoning in *Under Seal*, and the Supreme Court's earlier opinion in *United States v. Evans*, 333 U.S. 483 (1948). While the Court believes that the reasoning in *Under Seal* rules out the Government's argument in this case, *Under Seal* is not inconsistent with the Court's remedy.[6] The parties in *Under Seal* appear to have assumed that the penalty provision of Section 1959 was invalid entirely, i.e., it provided for no maximum or minimum penalty. *Under Seal*, 819 F.3d at 723. The Fourth Circuit concluded that it could not fill the comparatively larger statutory gap that it perceived to exist and rejected the Government's proposal that it read the penalty provision applicable to another offense to apply to murder in aid of racketeering. *Id.* at 724-25. The *Under Seal* opinion is thus predicated on two critical points: first, that *Miller* required the Court to invalidate the entire penalty provision of Section 1959(a)(1), leaving a statute that has no authorized penalty and cannot function independently, and second, that the Court cannot "replace" language from one provision with language from another. Neither point holds in this case: *Miller* does not require the Court to invalidate Section 1959's penalty in all respects, and the remaining, comparatively smaller, gap in the statute can be filled by reference to traditional rules of construction rather than by reference to another statute.

[6] *Evans* involved a statute that provided no penalty for certain offenses. The Supreme Court concluded that a statute without any penalty provision is unenforceable. 330 U.S. at 486. The Court rejected the Government's argument that the Court could save the statute by supplying a penalty. *Id.* at 487. *Evans* says relatively little about this case, however, because Section 1959(a) is not lacking any valid penalty. *Cf. id.* at 486 ("[W]here Congress has exhibited clearly the purpose to proscribe conduct within its power to make criminal and has not altogether omitted provision for penalty, every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose.").

While the Court does not adopt the Government's argument, it merits some discussion in light of the difficult issues involved in this case and their relative novelty. The Government's remedy is problematic because it would require the Court to excise the unconstitutional penalty in Section 1959 and then add to the statute two other provisions that do not currently apply, Sections 3559(a) and 3581. The Government's approach has superficial appeal, but it is functionally similar to the approach rejected by the Fourth Circuit in *Under Seal*. *See* 819 F.3d at 723-24. The Supreme Court and Second Circuit have previously authorized saving constructions through reference to prior enactments, *Jackson*, 390 U.S. at 586-89, and traditional rules of construction, *Free Enter. Fund*, 561 U.S. at 509; *Booker*, 543 U.S. at 260-61; *John Doe, Inc.*, 549 F.3d at 883, but they have not blessed the "severance by addition" approach suggested by the Government.[7]

Exacerbating the problem with the Government's approach, the legislative history to Section 3581 and the relatively few decisions interpreting that statute make clear that Congress did not intend Section 3581 to be used as a default penalty provision in the manner advocated by the Government. The Senate Report accompanying Section 3851 explains that the grading scheme was "intended merely to provide a useful scheme for future Congressional classification of criminal statutes." S. REP. 98-225, 51, 1984 U.S.C.C.A.N. 3182, 3234. Based on this legislative history and an analysis of the statutory scheme, the Circuit Courts have concluded that: "Section 3581's sentences are only applicable to those criminal statutes in which Congress has provided a letter grade classification. There is no indication that Section 3581 was intended

---

[7] The breadth of the Government's proposal here is also noteworthy. If the Government were correct, Sections 3559 and 3581 would provide default penalties for *every* provision of Title 18 in the event of a constitutional infirmity. *See* Oral Arg. Tr. at 4:21-5:4. That is precisely the result that Congress, which candidly acknowledged that it had not done a statute-by-statute analysis of the grading system, did not intend for these provisions.

to modify clearly established statutory sentences." *United States v. LaFleur*, 971 F.2d 200, 210 (9th Cir. 1991). The Government acknowledges that it is unaware of any Court that has read Sections 3581 and 3559 as it is advocating.

In sum, the Court holds that Section 1959(a)(1) is invalid as applied to juveniles to the extent it provides for a mandatory minimum sentence of life-imprisonment. The maximum penalty authorized by Congress—life in prison—remains valid. In the absence of specific guidance from Congress, the Court holds that authorization of a maximum penalty provides the Court with discretion to sentence a defendant to any term of years up to the maximum. The Court acknowledges that reasonable minds could differ as to what Congress would intend under the circumstances. Congress could choose from a spectrum of potential penalties and different penalty schemes, including a lesser mandatory minimum or mandatory sentencing factors designed specifically in light of *Miller*, and it remains free to do so. The Court's task is to consider whether the statute—as constitutionally construed—will serve Congress's "basic purpose" and be consistent with Congress's intent had it legislated with *Miller* in mind. Because the Court believes that is fairly possible in this case, it denies the Defense's motion to dismiss Count Five of the indictment.

**CONCLUSION**

Bracy's motion to dismiss is DENIED. The Clerk of Court is respectfully requested to close the open motions at docket entries 204 and 493.

**SO ORDERED.**

**Date: December 29, 2016**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**